IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02392-REB-MEH

MALIBU MEDIA, LLC,

    Plaintiff,

v.

JOHN DOES 3, 9, 16, and 17,

    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is Doe #17's Motion to Sever and Dismiss [filed December 1, 2012; docket #48]. In accordance with 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the matter is referred to this Court for recommendation [docket #50]. Oral argument would not materially assist the Court in its adjudication of the motion. For the reasons set forth below and based on the record herein, the Court RECOMMENDS Doe #17's motion be **denied**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

**I.     Background**

    A.     Factual Allegations

In this case, Plaintiff Malibu Media, LLC alleges that the Doe Defendants, identified only by their Internet Protocol ("IP") addresses, infringed on Plaintiff's copyrighted work by using the internet and a "BitTorrent" protocol to reproduce, distribute, display, or perform Plaintiff's protected motion picture. Specifically, Plaintiff alleges that its computer investigator, using a forensic software that scans peer-to-peer networks for the presence of infringing transactions, extracted data identifying transactions (uploading and downloading), together with the associated IP addresses, involving the file (copyrighted work), which is identified by a unique hash number. Through such data, the investigator was able to identify the IP addresses, the hit dates and times on the unique hash number, and the location (city/state) of each IP address. Thus, for unique Hash Number C0BAB6F898A8CACBF7E221D1E15076A75869656D, which identifies the motion picture at issue in this case, "Morning Tryst," Exhibit A to the Complaint reflects a list of 22 IP addresses and, for each address, the hit dates and times ranging from July 27, 2012 to August 30, 2012, the locations of each address in Colorado, and the Internet Service Provider (ISP) for each address. *See* docket #1-2.

    B.     Procedural History

Based upon these facts, Plaintiff initiated this action on September 9, 2012, against twenty-two Doe Defendants. In an effort to identify the alleged infringers, Plaintiff requested permission from the Court to serve limited, immediate discovery on the Doe Defendants' ISPs prior to the Rule 26(f) conference. (Docket #6.) The Court determined that Plaintiff had shown good cause for limited expedited discovery, and granted Plaintiff's motion in part. (Docket #9.) In particular, the

Court authorized Plaintiff to serve third party subpoenas pursuant to Fed. R. Civ. P. 45 on the identified ISPs for the limited purpose of ascertaining the identities of the Doe Defendants as reflected by the twenty-two (22) IP addresses listed in Docket #7-2. The Court directed that the subpoena be limited to providing Plaintiff with the name, address, telephone number, email address, and Media Access Control address of the Defendant to whom the ISP has assigned an IP address. With each subpoena, the Court directed Plaintiff also to serve a copy of its order. Finally, the Court emphasized that Plaintiff was only permitted to use the information disclosed in response to the subpoenas for the purpose of protecting and enforcing its rights as set forth in its Complaint. The Court cautioned Plaintiff that improper use of this information would result in sanctions.

In conjunction with a motion to proceed anonymously and a motion for protective order, Doe #17 proceeding *pro se* filed a motion to sever and dismiss on November 9, 2012; however, the Court denied the motions without prejudice warning Doe #17 that, to the extent the motions were prepared by an attorney, "ghost writing" was improper. (Docket #39.) Thereafter, Doe #17, represented by an attorney, filed renewed motions to proceed anonymously,[2] for protective order and to sever and dismiss (dockets ##41, 42,43); however, the Court denied without prejudice the motion for protective order and motion to sever and dismiss for failure to comply with Judge Blackburn's practice standard concerning page limitations. (Docket #47.)

Then, in compliance with applicable rules and practice standards, Doe #17 filed the present motion on December 1, 2012 questioning Plaintiff's litigation strategies and arguing that joinder is improper in this case. Specifically, Doe #17 contends joinder "is not appropriate for two reasons:

---

[2]The Court granted Doe #17's motion to proceed anonymously for the sole purpose of adjudicating the present motion and a motion for protective order. (Docket #46.)

(1) Defendants [sic] actions do not arise out of the same transaction or occurrence; and (2) permitting joinder would undermine Rule 20(a)'s purpose of judicial economy and trial convenience." Motion, docket #48 at 4-5.  With respect to the first reason, Doe #17 states that the facts do not demonstrate the Defendants "each, together, was part of the downloading done by hundreds or thousands of individuals" and the "evidence shows that each defendant could not be physically present and interacting with each other at the same day and time." *Id.* at 8.  In support of the second reason, Doe #17 argues "the court would be unable to efficiently accommodate all twenty-two (22) defendants and their attorneys, hold case management conferences, nor [sic] try all defendants' claims together in a manner that does not prejudice Defendants." *Id.*  Further, Doe #17 asks the Court to follow an opinion by Judge Young of the District of Massachusetts in which the judge determined it proper to sever 47 defendants pursuant to Rule 20(b) based upon concerns that the defendants may proffer separate defenses at trial, that the plaintiff was using joinder to facilitate a "low cost, low risk revenue model," and that plaintiff was using joinder to coerce defendants to settle. *Id.* at 10-13.  Finally, Doe #17 claims the Plaintiff has engaged in improper litigation tactics to coerce settlements from Doe Defendants in this District, and attaches copies of declarations from various attorneys and parties in support of his position.

In response, Plaintiff argues that Rule 20 not only permits joinder when the Plaintiff demonstrates the same transaction or occurrence among Defendants, but also allows the Plaintiff to demonstrate a "series of transactions or occurrences" or "joint and several liability." Docket #52. Plaintiff asserts that its has demonstrated both of the latter to meet Rule 20's requirements.  For example, Plaintiff contends that through the BitTorrent process, "each Defendant downloaded a piece of the [copyrighted Work], which had been transferred through a series of uploads and

4

downloads from the Initial Seeder, through other users or directly, to each Defendant, and finally to [the investigator]." *Id.* at 4. Further, Plaintiff contends that it will prove at trial that "the Defendants' infringement was committed through the same transaction or series of transactions with mathematical certainty by demonstrating, *inter alia*, that the algorithm used by BitTorrent Trackers would have caused the entire series of transactions to be different <u>but</u> <u>for</u> each of the Defendants' infringements." *Id.* at 3 (emphasis in original). Moreover, Plaintiff states that its claims against the Defendants not only jointly, but also *severally*, satisfy the Rule 20(a)(2)(A) requirement. Plaintiff also argues that common issues of law and fact exist in this case pursuant to Rule 20(a)(2)(B), that the putative Defendants are not prejudiced by joinder at this stage of the litigation, and that joinder here would promote judicial efficiency.

Although given the opportunity to do so, Doe #17 did not file a reply brief in support of his motion.

**II.    BitTorrent Protocol**

Because Doe #17 questions joinder in this case by pointing to certain aspects of the process used to download a copyrighted work through the BitTorrent program, this Court finds it necessary to explain how BitTorrent works. Fortunately, several courts in this country have researched, defined and described the protocol in such a way that even technologically challenged individuals may understand the intricacies of the BitTorrent program. This Court finds particularly instructive and gratefully adopts the description provided by the Honorable Thomas L. Ludington, District Judge for the Eastern District of Michigan, in *Patrick Collins, Inc. v. John Does 1-28*, No. 12-13670, 2013 WL 359759 (E.D. Mich. Jan. 29, 2013), in which Judge Ludington first defines terms used with the protocol, then describes how BitTorrent operates. *Id.* at *1-*3. First, the vocabulary used

in the technology:

> *Internet Protocol* (IP): The system of communication standards that ensures data packets transmitted over the internet reach their intended destinations.
>
> *IP Address:* The unique identifying number of a device connected to the internet.
>
> *Uniform Resource Locator* (URL): The internet address assigned to a web document or resource by which it can be accessed by all web browsers.
>
> *File:* A collection of related data packets treated as a unit.
>
> *Hash Identifier:* A 40-character alphanumeric string that forms a unique identifier of an encoded file.
>
> *Hypertext Transfer Protocol* (HTTP): A system of communication standards that websites use to communicate with web browsers.
>
> *BitTorrent:* A peer-to-peer file sharing protocol.
>
> *Peer:* A BitTorrent user.
>
> *Swarm:* A group of peers sharing a particular file (identified by its unique hash identifier). A swarm has two types of peers – "leechers" and "seeds." It bears reiterating: to constitute a swarm, all of the peers must be sharing the same file (identified by its unique hash identifier).
>
> *Initial Seeder:* A BitTorrent user who first takes a particular file (such as a movie), breaks it into pieces, encodes the pieces with hash identifiers, creates a torrent file with the data about that file and its tracker, and makes the complete file available to other BitTorrent users.
>
> *Seed:* A peer who downloaded a complete file and is uploading all of its pieces to other peers in the swarm.
>
> *Leecher:* A peer in the process of downloading the file from the other peers. As soon as a leecher downloads new content (a piece of the file), the leecher begins sharing its content with the other leechers in the swarm.
>
> *Piece*: A one-quarter megabyte size part of a file being shared via BitTorrent (except for the last, smaller piece, which is the size of the remainder of the file).
>
> *Tracker:* A server containing an updated list of peers in the swarm. It allows a peer to learn about other peers sharing a particular torrent and join the swarm.

>*Torrent file*: The hub of the BitTorrent system, a *torrent* file is a small file containing the file name, the IP address of the tracker, the number of and size of the pieces, and the hash identifier unique to the pieces of that particular torrent file.

*Patrick Collins, Inc.*, 2013 WL 359759, at *1-*2 (citations omitted). Judge Ludington proceeds to describe the protocol and how BitTorrent works:

>BitTorrent, as noted, is a peer-to-peer file sharing protocol. More precisely, it is a peer-to-peer model that improves on prior generations of peer-to-peer networks by solving the "free-rider problem wherein a substantial majority of users downloaded but never uploaded content."
>
>. . .
>
>Briefly, here's how BitTorrent works. A file transfer begins "when one user accesses the Internet through an ISP and intentionally makes a digital file of a work available to the public from his or her computer. This file is referred to as the first 'seed.' Other users, who are referred to as 'peers,' then access the Internet and request the file. These users engage each other in a group, referred to as a 'swarm,' and begin downloading the seed file. As each peer receives portions of the seed, that peer makes those portions available to other peers in the swarm."
>
>Elaborating on the process, BitTorrent.org explains that to download a file, a peer performs six steps:
>
>1. Install BitTorrent (or have done so already).
>2. Surf the web.
>3. Click on a link to a *.torrent* file.
>4. Select where to save the file locally, or select a partial download to resume.
>5. Wait for download to complete.
>6. Tell downloader to exit (it keeps uploading until this happens).
>
>BitTorrent's key, as noted, is reciprocity – a peer not only downloads but automatically uploads pieces to other peers. "To keep the torrent operating at maximum capacity, the BitTorrent protocol uses a process called pipelining. Every active peer in a torrent maintains a continuously refreshed queue of requests for pieces, so that no connection is ever left idle after any one piece is downloaded."
>
>"In addition, the protocol has an internal mechanism that makes sure that those peers who are offering little or nothing to the torrent will get little or nothing from it."
>
>In sum, BitTorrent is a reciprocal, decentralized network – and a tough nut to crack for copyright holders:

> Data is not stored on a central server. Rather, a user downloads the file in discrete segments from many different users who send data directly to one another. While trackers coordinate and assist peers in locating a swarm, the tracker itself sends out very little data. This makes BitTorrent an extremely efficient mechanism for transferring large files and at the same time, it insulates the protocol itself from anti-piracy efforts because there are no central servers to enjoin from unlawfully distributing copyrighted content. Thus, when copyrighted data is transmitted via BitTorrent, the copyright holder is largely limited to holding the individual file sharers liable for infringement.

*Id.* at *2-*3 (citations omitted).

### III.   Legal Standards

The remedy for misjoinder under Federal Rule of Civil Procedure 21 is not dismissal of the action. *See* Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for dismissing an action."). Rather, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." *Id.*

The requirements for permissive joinder of defendants in federal actions are set forth in Federal Rule of Civil Procedure 20(a)(2). Joinder is proper under Rule 20(a)(2) if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." The Court also considers whether joinder would prejudice any party or result in needless delay. *See* Fed. R. Civ. P. 20(b); *see also First Time Videos, LLC v. Does 1-76*, 276 F.R.D. 254, 257 (N.D. Ill. 2011). That is, "[t]he Court may exercise discretion "regarding the proper time to sever parties, and this determination includes consideration of judicial economy and efficiency." *Voltage Pictures, LLC v. Does 1-5,000*, 818 F. Supp. 2d 28, 38 (D.D.C. 2011).

According to the Supreme Court, courts must interpret the Federal Rules of Civil Procedure

to entertain "the broadest possible scope of action consistent with fairness to the parties"; thus, "joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). Therefore, Rule 20 is construed liberally "to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *Cooper v. Fitzgerald*, 266 F.R.D. 86, 88 (E.D. Pa. 2010).

**IV.    Analysis**

Here, Doe #17 primarily challenges joinder pursuant to Fed. R. Civ. P. 20(a)(2)(A), arguing that Plaintiff's allegations fall short of demonstrating a right to relief with respect to or arising out of the same transaction or series of transactions. Doe #17 also contends the allegations fail to show any question of law or fact common to all Defendants in this case in contravention of Fed. R. Civ. P. 20(a)(2)(B). Finally, Doe #17 asks the Court to conclude, in its discretion pursuant to Fed. R. Civ. P. 20(b), that joinder would prejudice the Defendants. The Court will address each challenge in turn.

        A.    <u>Same Transaction or Series of Transactions</u>

The first requirement for joinder is that the claims must "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A). "'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *DIRECTV v. Barrett*, 220 F.R.D. 630, 631 (D. Kan. 2004) (quoting *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974)). "Language in a number of decisions suggests that the courts are inclined to find that claims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience,

and added expense to the parties and to the court." *Sprint Commc'ns. Co. v. Theglobe.com, Inc.*, 233 F.R.D. 615, 617 (D. Kan. 2006) (quoting 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1653 (3d ed. 2001)).

In this case, Doe #17's request to sever comes at an early stage of the case before discovery has begun. The Court finds instructive an opinion by a judge in this District, the Honorable Christine M. Arguello, finding that joinder was proper under Rule 20(a)(2)(A) at an early stage in a case based upon the same or similar allegations made in this case. *See Patrick Collins, Inc. v. John Does 1-15*, No. 11-cv-02164-CMA-MJW, 2012 WL 415436, at *2 (D. Colo. Feb. 8, 2012). That is, Judge Arguello concluded that the "Plaintiff has provided enough specificity to make a preliminary determination that the Doe Defendants were part of the same swarm," by alleging that each Defendant directly interacted and communicated with other members of the same swarm, identified by a single alphanumeric hash number, through "digital handshakes," the passing along of computer instructions, and by uploading and downloading the alleged infringed work. *Id.* The Plaintiff in this case makes the same or very similar allegations as those made in *Patrick Collins, Inc.* (*See* docket #1.) According to Judge Arguello, "[t]he nature of the BitTorrent protocol requires concerted action by peers in order to disseminate files, such as the [copyrighted] Work, and the Doe defendants allegedly engaged in this concerted action by entering and contributing to the same swarm." *Id.* (citing *First Time Videos, LLC*, 276 F.R.D. at 257).

Likewise, here, the allegations are sufficient to demonstrate that the Doe Defendants, all located in Colorado, engaged in downloading and uploading the same file (motion picture) identified by a unique hash number during a relatively short time period. Moreover, Plaintiff alleges a right to relief not only jointly, but severally against Defendants for direct and contributory infringement

10

of the motion picture. Thus, the Court recommends finding that Plaintiff's allegations meet the requirements of Rule 20(a)(2)(A).

### B. Common Questions of Law or Fact

As mentioned above, Judge Arguello has analyzed a very similar case and found, with respect to the "common question of law or fact" requirement, "[a]lthough it is conceivable that individual Doe Defendants may assert different factual and legal defenses at a later point, 'that does not defeat, at this stage of the proceeding, the commonality in facts and legal claims that support joinder under Rule 20(a)(2)(B).'" *See Patrick Collins, Inc.*, 2012 WL 415436, at *3 (quoting *Call of the Wild Movie, LLC v. Does 1-1062*, 770 F. Supp. 2d 332, 342 (D.D.C. 2011)). In that case, Judge Arguello determined that to recover from each of the 15 putative defendants under the Copyright Act, the plaintiff would need to establish it is the owner of the alleged infringed work, that "copying" has occurred, and that entering a swarm constitutes a willful act of infringement. *Id.* Moreover, Judge Arguello recognized common factual issues in the plaintiff's allegation that the Doe defendants used the same BitTorrent protocol to download and distribute the work, including "'how BitTorrent works and the methods used by Plaintiff to investigate, uncover, and collect evidence about the infringing activity.'" *Id.* (quoting *Patrick Collins, Inc. v. Does 1-2,590*, No. C 11-2766 MEJ, 2011 WL 4407172, at *6 (N.D. Cal. Sept 22, 2011)). Like that case, the present matter requires proof of the same elements against each Defendant and involves the same allegations concerning the Defendants' use of the BitTorrent protocol. Therefore, the Court recommends finding that Plaintiff has met the requirements of Rule 20(a)(2)(B).

### C. Prejudice to the Parties

Courts, including courts in this District, have reached different conclusions regarding whether to address the issue of joinder prior to permitting discovery. Those addressing joinder as a threshold matter have noted that allowing a case to proceed against improperly joined defendants enables a plaintiff to obtain personal information and ultimately extract settlements with only a single filing fee. *See, e.g., Patrick Collins, Inc. v. Does 1-10*, No. JFM 8:12-cv-00094, 2012 WL 1144980, at *3 (D. Md. April 4, 2012) (citations omitted). Underlying this approach is a belief that the plaintiff's business model could not (or would not) support separate lawsuits against each individual defendant. *See id.*; *see also Third Degree Films v. Does 1-47*, 286 F.R.D. 188, 190-91 (D. Mass. 2012) (Judge Young notes a concern about "allowing the adult film companies unfettered access to the judicial processes of subpoenas and early discovery" and citing an opinion from the Northern District of California in which the court censured a plaintiff for having never served a single Doe defendant after early discovery had been granted). However, in this District, the Plaintiff and its counsel have demonstrated their willingness to proceed against single identified defendants in the same or very similar cases. *See, e.g., Malibu Media LLC v. Dunn*, 12-cv-00886-MSK-MEH; *Malibu Media v. Linn, et al.*, 12-cv-01394-WYD-MEH; *Malibu Media, LLC v. Geary*, 12-cv-01876-REB-MEH (trial scheduled Oct. 17, 2013); *Malibu Media, LLC v. Batz, et al.*, 12-cv-01953-WYD-MEH; *Malibu Media, LLC v. Wieland*, 12-cv-02549-MSK-MEH. Because the Plaintiff and its counsel sue individuals after obtaining their identities in the same or similar cases, the Court is not persuaded that severing defendants prior to discovery would deter the Plaintiff here from pursuing its claims.

As for the concern expressed by Judge Young and others that joinder of multiple defendants at the pre-discovery stage promotes coercive settlements, the Court does not agree. Some courts

appear to be troubled that copyright holders use judicial resources to obtain the identities of multiple defendants, then contact and convince these defendants that they must settle or be subject to a public lawsuit concerning infringement of a pornographic film or other media. These courts determine that severing such defendants will deter the copyright holder's conduct. *See, e.g., Third Degree Films*, 286 F.R.D. at 198 ("the most appropriate method to protect against any potential coercion is to sever the Doe defendants and require them to be sued individually."). However, whether it is one defendant or one hundred defendants named in a lawsuit, due simply to the suggestive content of the alleged infringed material, the copyright holder still has the ability to attempt to convince a defendant to settle or to be identified in a public lawsuit.[3] The question whether the copyright holder intends actually to pursue its claims against identified defendants to trial has been answered, at least in this District, as noted above. Thus, this Court is not persuaded that joinder of multiple defendants in one action during the pre-discovery stage necessarily contributes to any coercive settlements, to the extent they may be occurring.

---

[3] Doe #17 attaches affidavits from three attorneys who practice in this District and from two parties (one identified as "John Doe," but it is unclear whether it is Doe #17) in which these individuals attest that, when offered the opportunity to investigate the parties' claimed innocence, Plaintiff is not interested in doing so. The Court does not doubt the description of these affiants' experiences, but the Court also has witnessed firsthand the Plaintiff's willingness to resolve cases without any monetary payment when a Defendant credibly denies infringement. Moreover, while the Court encourages the Defendants' willingness and attempts to demonstrate their non-participation in the alleged conduct, the Court also recognizes the time and expense involved with scanning electronic devices for evidence of infringing activity, especially at the pre-discovery stage of litigation. Nevertheless, in an effort to reduce the likelihood of any untoward conduct here, this Court affirms the practice of ISPs to withhold a Doe Defendant's identifying information pending the resolution of any motion filed by a Doe Defendant challenging the subpoena, and typically grants a Doe Defendant's well-supported motion to proceed anonymously in the case pending resolution of motions to dismiss or to sever, or motions to quash. Further, with the Plaintiff's consent, the Court has granted motions for protective order allowing Doe Defendants to proceed in the litigation anonymously.

Notably, Doe #17 fails to articulate why the present matter deserves different treatment than the case adjudicated by Judge Arguello. In fact, this Court finds that joinder at an early stage of the litigation in these types of cases promotes judicial efficiency and economy. *See Patrick Collins, Inc.*, 2012 WL 415436, at *1("[T]he Court may exercise discretion in determining whether to sever defendants, and this determination includes a consideration of judicial economy and efficiency."). This case was filed on September 9, 2012. Severing Defendants now would delay, but not eliminate, Plaintiff's efforts to obtain Doe #17's identifying information from the ISP. Simply put, severance affects the timing of disclosure but not the underlying right. In this context, such a delay may prove fatal to Plaintiff's claims insofar as Plaintiff alleges that the information it seeks is subject to destruction. (Docket #6 at 5.) Given the inevitable disclosure of the information at issue in the subpoena, it seems judicial efficiency is best promoted by declining to reach the question of joinder at this time. *See Patrick Collins, Inc.*, 2012 WL 415436, at *4 ("joinder of the Doe Defendants 'facilitates jurisdictional discovery and expedites the process of obtaining identifying information, which is prerequisite to reaching the merits of [Plaintiff's] claims.'") (quoting *Voltage Pictures, LLC*, 818 F. Supp. 2d at 38). Conversely, Doe #17 proffers no persuasive argument that the Court will be inconvenienced or that he will be unduly prejudiced by the joinder of Doe defendants at the early stage of litigation.

Other courts have found dismissal improper on the grounds of misjoinder during the early stages of litigation. *See, e.g., Patrick Collins, Inc. v. John Does 1-21*, 282 F.R.D. 161, 169 (E.D. Mich. 2012), *recommendation adopted by Patrick Collins, Inc. v. John Does 1-21*, 286 F.R.D. 319 (E.D. Mich. 2012); *see also Malibu Media, LLC v. Does 1-14*, No.1:12-CV-263, 2012 WL 6115653, at *9 (N.D. Ind. Dec. 10, 2012); *Malibu Media, LLC v. Does 1-25*, No.12-cv-0362-LAB (DHB),

2012 WL 2367555, at *3 (S.D. Cal. June 21, 2012); *Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d 1, 11 (D.D.C. 2008) ("While the Court notes that the remedy for improper joinder is severance and not dismissal, ... the Court also finds that this inquiry is premature without first knowing Defendants' identities and the actual facts and circumstances associated with Defendants' conduct.").

Accordingly, the Court concludes that Doe #17 has failed to demonstrate why the District Court should dismiss him as a party or sever Plaintiff's claims against him at this time, and recommends that the District Court deny Doe #17's motion. Should discovery proceed in this case, it is possible to address any administrative challenges or undue prejudice to the parties at that time.

## V.     Conclusion

For the reasons stated above, the Court finds that Doe #17 has not met his burden of showing severance pursuant to Fed. R. Civ. P. 21 is proper at this stage of the litigation. Therefore, the Court respectfully recommends that Doe #17's Motion to Sever and Dismiss [filed December 1, 2012; docket #48] be **denied**.

Dated at Denver, Colorado, this 12th day of February, 2013.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

15